**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **RUKIYA P. McCLAIN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:18-CV-1682-RDP** |
| | } | |
| **STATE OF ALABAMA DEPARMENT OF** | } | |
| **HUMAN RESOURCES, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

**MEMORANDUM OPINION**

This case is before the court on Defendants' Motion to Dismiss Plaintiff's Complaint. (Doc. # 6). Plaintiff has responded (Doc. # 11), and the Motion is ripe for decision.[1] After careful review, and for the reasons explained below, the court concludes that Defendants' Motion to Dismiss is due to be granted in part and denied in part.

**I.     Background**

Plaintiff, Rukiya P. McClain, claims that Defendants discriminated against her based on her race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Doc. # 1). She also raises a retaliation claim under 42 U.S.C. § 2000e-3(a). (*Id.*). In support of these claims, Plaintiff alleges the following facts in her Complaint.

Plaintiff, an African-American female, was employed as a Child Welfare Worker for over thirteen years with Defendant Jefferson County Department of Human Resources (hereinafter "Jefferson County DHR"). (Doc. # 1 at ¶ 10). Plaintiff asserts that although she performed her

---

[1] Defendants chose not to file a Reply brief as permitted by the court's docket entry indicating the briefing schedule for this case. (Doc. # 7).

job competently throughout her employment, Defendant routinely treated her differently than her "white and/or male and/or younger counterparts." (*Id*. at ¶ 12).

Specifically, Plaintiff alleges that on July 8, 2015 at 3:36 a.m., her co-worker, Chrislyn Pepper, received a call through the crisis stabilization unit of DHR. (*Id*. at ¶ 13). Pepper then transferred the call to Plaintiff, who was on call for the night shift. (*Id*. at ¶ 14). Together, they questioned the "Reporter" (that is, the person making the report) and determined that his information did not amount to a "neglect or endangerment call." (*Id*. at ¶¶ 15, 18). Plaintiff claims that they investigated the background of the mother and child in question, but did not detect any history or association with the Reporter. (*Id*. at ¶ 24). She further contends that at the time of this call, DHR had no policy or procedure that required its employees to perform a search for a history on a Reporter. (*Id*. at ¶ 22). Plaintiff claims that pursuant to DHR policy, she and Pepper did not investigate the Reporter's history because they had no reason to believe there was any allegation against him relating to the abuse or neglect of a child. (*Id*. at ¶ 23).

On July 15, 2015, Plaintiff met with the Assistant Director and Program Manager at Jefferson County DHR. (*Id*. at ¶ 25). During that meeting, they allegedly informed Plaintiff that she would be receiving a "Charge Letter" for disciplinary action based on her response to the July 8, 2015 call. (*Id*.). Thereafter, Defendants held an administrative hearing on August 12, 2015 that resulted in Plaintiff's termination on October 2, 2015. (*Id*. at ¶¶ 26, 27; Doc. # 1-1). According to Plaintiff, Defendants' justification for her termination was that she failed to perform her job according to DHR Rules and the Rules of the State Personnel Board. (*Id*.).

Additionally, Plaintiff claims that Pepper was disparately treated—*i.e.*, not disciplined for her handling of the same call. (*Id*. at ¶ 33). Instead, Plaintiff submits that Pepper was promoted to supervisor on or about September 16, 2015, just weeks before Plaintiff's termination. (*Id*. at ¶

34). Plaintiff alleges that Pepper was treated more leniently because she is "apparently a bi-racial female and her age is believed to be less than 40, her nationality is unknown…her color/complexion is light, and she has no known prior protected activity." (*Id*. at 4). Plaintiff also avers that her "white and/or male and/or younger colleagues" who failed to adequately perform their jobs by contributing to "child injuries and or deaths" were not similarly punished or terminated. (*Id*. at ¶ 32).

On February 18, 2016, Plaintiff filed a Charge of Discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC"). (Doc. # 1-1). Plaintiff's EEOC charge asserts that she was subjected to (1) discrimination based on race, sex, color, age, and national origin and (2) retaliation for engaging in protected activity. (*Id*.). She indicated that the alleged discrimination began on August 12, 2015 (the date of her administrative hearing). (*Id.*). The court notes that February 18, 2016 is within 180 days of the alleged unlawful employment practices.

On July 12, 2018, the EEOC issued Plaintiff a Dismissal and Notice of Rights. (Doc. # 1-2). Although Plaintiff does not indicate when she received this letter, Rule 6 of the Federal Rules of Civil Procedure creates a presumption that receipt occurs three days after the mailing date. Federal Rule of Civil Procedure 6(d). Because three days after the mailing date was Sunday, July 15, 2018, Plaintiff is presumed to have received the Dismissal and Notice of Rights on Monday, July 16, 2018. Plaintiff filed her Complaint initiating this action on October 14, 2018. (Doc. # 1). The court notes that this date is within ninety (90) days of July 16, 2018, the date Plaintiff is presumed to have received the letter.

## II.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Id.* at 555, 557.  In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party.  *Watts v. Fla. International Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim.  *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136,

138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## III.    Analysis

In their Motion to Dismiss, Defendants seek dismissal of Plaintiff's claims on four separate grounds. Defendants argue that (1) Plaintiff's individual and official capacity claims against Angela McClintock are due to be dismissed (Doc. # 6 at 5-6); (2) Plaintiff's claims for monetary damages are barred by the Eleventh Amendment (*Id*. at 6-7); (3) Plaintiff has failed to sufficiently plead facts to state a claim for race and sex discrimination under Title VII (*Id*. at 8-10); and (4) Plaintiff lacks standing to pursue injunctive and declaratory relief (*Id*. at 10-12). The court addresses each argument in turn and finds that Defendants' Motion is due to be granted in part and denied in part.

### A.    All Title VII Claims Against Defendant McClintock are Due to be Dismissed

In her claims for Title VII race discrimination and retaliation, Plaintiff names Angela McClintock both in her individual capacity and her official capacity as the Director of the Jefferson County DHR. (Doc. # 1). Defendants correctly argue that individual capacity suits under Title VII are inappropriate. (Doc. # 6 at 5-6). Indeed, the Eleventh Circuit has confirmed that the proper method for an employee to recover under Title VII is by suing the employer. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991); *see also Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir. 1995).

Furthermore, because Plaintiff has properly named her employers as Defendants to her Title VII claims, her claims against McClintock in her official capacity may be dismissed as duplicative. *See Scott v. Ala. Dep't of Human Resources*, 2016 WL 1573266, at \*2 (N.D. Ala. April 16, 2016) (dismissing official capacity claim against individual defendant on a second motion to dismiss because plaintiff had already named Alabama DHR and Jefferson County DHR as defendants); *see also Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

In the face of this clear precedent, Plaintiff has withdrawn any and all claims against Defendant McClintock in her individual and official capacities. (Doc. # 11 at 9-10). Therefore, all claims against Defendant McClintock are due to be dismissed, and Plaintiff's claims for Title VII race discrimination and retaliation may proceed against Alabama DHR and Jefferson County DHR.

### B.  The Eleventh Amendment Does Not Bar Plaintiff's Claims for Back Pay

Defendants mistakenly rely on *Edelman v. Jordan*, 415 U.S. 651 (1974) to argue that the Eleventh Amendment bars state agencies from using state funds to remedy past Title VII violations. (Doc. # 6 at 6-7). In *Edelman*, the Supreme Court held that the Eleventh Amendment shielded Illinois state officials from retroactively awarding wrongfully withheld benefits. 415 U.S. at 678. The court reasoned that absent a state's waiver of its immunity or a congressional authorization to sue, a state cannot be compelled to compensate a plaintiff for the past violations of its officials. *Id*. at 672.

But, two years later in *Fitzpatrick v. Bitzer*, the Supreme Court clarified its ruling within the context of Title VII. 427 U.S. 445 (1976). The Court differentiated the two cases based on

the "threshold fact of congressional authorization" for a citizen to sue his or her state employer under Title VII. *Id*. at 446.Thus, its holding in *Edelman* did not prevent states from awarding back pay to plaintiffs suing for state violations of Title VII, because state defendants lack Eleventh Amendment immunity in Title VII actions. *Id*. at 451-57.

Since *Fitzpatrick*, the Eleventh Circuit has acknowledged Congress's clear intent "to abrogate the states' Eleventh Amendment immunity when it amended Title VII to cover state and local governments."[2] *In re Employment Discrimination Litig. Against State of Ala.*, 198 F.3d 1305, 1317 (11th Cir. 1999). Moreover, Title VII expressly authorizes court-ordered back pay awards from state defendants. When confronted with an unlawful employment practice, federal courts may "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay…or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g). Given express congressional authority for an individual to sue state defendants for monetary damages under Title VII, Plaintiff may proceed with her claims for back pay.

### C. Plaintiff's Claims for Race and Sex Discrimination are Due to be Replead

Defendants assert that Plaintiff's Complaint does not state a claim for race or sex discrimination because it fails to plead a prima facie case of discrimination in that it does not explain how Defendants treated similarly situated employees outside of Plaintiff's class more favorably. (Doc. # 6 at 8-10). Specifically, Defendants argue that although Plaintiff has attempted to plead the existence of a comparator for her discrimination claims, she has not identified a comparator outside of her own class. (*Id*. at 9-10). In the alternative, for similar

---

[2] Title VII was first enacted in 1964. At that time, the statutory language did not extend its coverage to state and local governments. In 1972, however, the statute was amended to make suable "governments, governmental agencies, [and] political subdivisions." 42 U.S.C. § 2000e(a).

reasons, the court finds that Plaintiff's claims for Title VII race and sex discrimination are due to be repled.[3]

First, the court notes that allegations relating to the existence of a comparator are not required to survive a motion to dismiss. Although "the classic method of establishing a prima facie case of race [or sex] discrimination is to identify a similarly situated comparator outside the plaintiff's protected group that was treated more favorably than the plaintiff" *Walker v. Love's Travel Ctr.*, 2017 WL 4931693, at *2 (S.D. Ala. Oct 31, 2017), contrary to Defendants' assertion, a complaint "need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case." *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir.2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). Rather, a complaint need only "provide enough factual matter (taken as true) to suggest intentional race [or sex] discrimination." *Id.* (quotation marks omitted) (citing *Twombly*, 550 U.S. at 555). It follows, then, that a plaintiff can satisfy Rule 8(a) pleading requirements without making specific allegations concerning the existence of a similarly situated comparator. *Walker*, 2017 WL 4931693, at *2-3 (explaining that allegations regarding the existence of a comparator are unnecessary at the motion to dismiss stage because a plaintiff may establish a prima facie case of Title VII discrimination, and even liability, without reference to a comparator).

In support of her race and sex discrimination claims, Plaintiff alleges that Chrislyn Pepper and her other white, male colleagues received more favorable treatment following similar (or worse) violations of DHR policy. (*See generally* Doc. # 1). Although comparator allegations are not required in order to survive a motion to dismiss, Plaintiff's chosen comparators bear discussion.

---

[3] Instead of granting Defendants' Motion to Dismiss, the court concludes the appropriate course here is to allow Plaintiff an opportunity to replead her discrimination claims. *See* Federal Rule of Civil Procedure Rule 15(a)(2) ("The Court should freely give leave [to amend] when justice so requires.").

Beginning with Pepper, Plaintiff claims that she was promoted to supervisor after participating in the same phone call that allegedly resulted in Plaintiff's termination. (Doc. # 1 at 4). Plaintiff describes Pepper as an "apparently bi-racial female" and attributes Pepper's more favorable treatment to her ambiguous race. (Doc. # 1 at 4; Doc. # 11 at 15-18). Defendants attach to their Motion to Dismiss DHR's "Employment Status Maintenance" record for Pepper, which shows that she is an African-American female. (Doc. # 6-1). Defendants argue Plaintiff's race discrimination claim fails because it is based upon someone within her own class receiving more favorable treatment. (Doc. # 6 at 9-10). The court makes no comment on the factual question of Pepper's race because consideration of the Employment Status Maintenance record would be improper at this stage as it falls outside the four corners of Plaintiff's Complaint. *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005). Furthermore, whether Pepper is an adequate comparator is a question better suited for summary judgment disposition after appropriate discovery.

Similarly, Defendants contend that Plaintiff's sex discrimination claim fails because Plaintiff has only identified Pepper (a female within her own class) as a comparator. But, in making this argument, Defendants seem to have overlooked Plaintiff's reference to her white, male colleagues, who supposedly received more favorable treatment after committing worse violations of DHR policy. (Doc. # 1 at 9-10). Although Plaintiff's allegations about these male colleagues are by no means detailed, they are sufficient to allow Plaintiff the opportunity to replead.

The court reminds Plaintiff that conclusory allegations that "an employer treated similarly situated employees of another race [or sex] differently, without further factual development, 'epitomizes speculation and therefore does not amount to a short and plain

statement of [a plaintiff's] claim under Rule 8(a).'" *Wells v. Voestalpine Nortrak, Inc.*, 2015 WL 554779, at *3 (N.D. Ala. Feb. 11, 2015) (quoting *Davis*, 516 F.3d at 974) (finding that plaintiffs failed to state a claim for race discrimination where the complaint alleged only that the plaintiffs were denied promotions and treated differently than similarly situated white employees solely because of race)). For example, Plaintiff does not provide: (1) the name or position of any of the white, male employees she claims are similarly situated and received more favorable treatment following similar or worse violations of DHR policy; (2) the circumstances of these alleged violations; or (3) the name of her supervisor or whether that supervisor also oversees the referenced similarly situated employees. Depending on the context of the claim and allegations supporting it, a plaintiff may not be required to allege all this information to make out a *McDonnell Douglas* prima facie case; but, without more detail than that provided here, there is a risk that the race and sex claims asserted under Title VII amount to little more than speculation. Consequently, the court believes it is best to replead these claims. Having said that, the court reminds Defendants that all Plaintiff must do at this point is put them on notice of a plausible claim.

### D.  Plaintiff May Seek Injunctive and Declaratory Relief

Lastly, Defendants argue that the injunctive and declaratory relief Plaintiff has requested is not available to remedy alleged past violations of federal law. (Doc. # 6 at 10-12). Again, the text of Title VII grants district courts broad authority to fashion the relief it deems appropriate to remedy unlawful employment practices. "[T]he court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate ... or any other equitable relief as the court deems appropriate." 42 U.S.C.A. § 2000e–5(g)(1). Simply put, "[t]he district court has broad, equitable discretion to grant any equitable relief it

deems appropriate to make persons whole for injuries suffered on account of unlawful employment discrimination." *Rivers v. Washington County Bd. of Educ.,* 770 F.2d 1010, 1012 (11th Cir.1985).

For example, in cases where a plaintiff has been terminated due to some discriminatory employment practice, courts have ordered that any documents reflecting such discrimination be removed from the employee's personnel file. *See Herawi v. State of Ala. Dep't of Forensic Scis.*, 330 F. Supp. 2d 1305, 1309 (M.D. Ala. 2004). Plaintiff also seeks reinstatement as a remedy, and her Complaint "plausibly indicate[s] a likelihood of future injury if Plaintiff were to be reinstated to her former position with Jeff. Co. DHR." *Bell v. Alabama Dep't of Human Res.*, 2017 WL 2443493, at *4 (N.D. Ala. June 6, 2017) (declining to dismiss a Title VII plaintiff's request for injunctive and declaratory relief where the plaintiff seeks reinstatement as a remedy for past discriminatory conduct). At this stage of litigation, the court cannot foreclose Plaintiff's opportunity to seek injunctive and declaratory relief. For these reasons, Defendants' motion to dismiss Plaintiff's request for injunctive and declaratory relief is due to be denied.

## IV.    Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is due to be granted in part and denied in part without prejudice. The Motion is granted as to Plaintiff's individual and official capacity claims against Defendant McClintock, thus all Title VII claims against Defendant McClintock are dismissed. The Motion is denied in all other respects. The court directs that, to the extent she wishes to pursue her Title VII race and sex discrimination claims, Plaintiff must file an amended complaint within fifteen (15) days of the date of this Memorandum Opinion and accompanying Order.

An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this January 23, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE